**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**PAULA GARDNER,**

     Plaintiff,

v.                                       Civil Action No. 7:18-CV-87 (HL)

**AUTOZONERS, LLC,**

     Defendant.

## ORDER

Plaintiff Paula Gardner brought this action against Defendant AutoZoners, LLC ("AutoZone") alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e)–3(a). Before the Court is Defendant's Motion for Summary Judgment. (Doc. 25).[1] After reviewing the briefs and evidentiary materials presented, and with the benefit of oral argument, the Court concludes that Plaintiff failed to support her claims with sufficient evidence. The Court accordingly **GRANTS** Defendant's motion.

## I.    FACTUAL BACKGROUND

Plaintiff was employed by Defendant at its Thomasville, Georgia AutoZone store. (Doc. 31-2, p. 5). She was hired as a part-time driver and sales employee

---

[1] Defendant also filed a Motion for Sanctions (Doc. 22). After hearing oral argument, the Court dismissed this motion.

in May 2016, and Defendant promoted her to a full-time position two months later. (*Id*. at pp. 5, 12). Plaintiff is an African American woman. (Doc. 31-3, p. 4).

Elijah White is the District Manager of the Thomasville, Georgia AutoZone. (Doc. 31-1, p. 12). Plaintiff communicated to White that she wanted to interview for a management position. (*Id*. at pp. 14–15). On November 8, 2016, however, Plaintiff notified White by text that she no longer sought the management position because she "wasn't ready." (*Id*. at p. 15). Four days later, Plaintiff texted White again, asking if she could participate in the manager's class that "White offered to help employees learn more about store operations and processes." (*Id*. at p. 16).

On March 1, 2017, Plaintiff asked White to interview her for a management position. (*Id*. at p. 18). Two days later, Plaintiff again texted White to take herself out of consideration for the management position. (*Id*.). The March 3 text exchange between Plaintiff and White is a point of factual dispute for the parties. In addition to saying she no longer intended to interview for management, Plaintiff also wrote that she had "two interviews [the] next week," including one with Defendant's competitor O'Reilly Auto Parts. (Doc. 31-8, p. 4). Defendant argues that Plaintiff's texts to White "indicated that she intended to resign." (Doc. 25-2, p. 7). Plaintiff denies this allegation, and instead asserts that her texts showed that "she was exploring job opportunities outside of AutoZone[,] and [she] had taken herself out of consideration for promotions." (Doc. 31-2, p. 19). Crucially, Plaintiff testified that she did not intend to resign. *See* (Doc. 31-3, pp.

2

3–4); (Doc. 25-3, pp. 17–18). She continued to work at AutoZone after March 3. (Doc. 31-3, p. 4).

Plaintiff alleges that on March 14, 2017, a regular commercial customer, Michael Hoffman, used racial slurs while speaking to Plaintiff. (Doc. 25-3, pp. 47–49).[2] According to Plaintiff, he used racial slurs on five to ten other occasions prior to March 14 while shopping at AutoZone. (Doc. 31-1, pp. 5–6). Plaintiff reported these past instances of racial discrimination to her immediate supervisor, Sanya Baker. (Doc. 31-3, p. 3). Hoffman called Defendant's corporate office to complain about his interaction with Plaintiff. (Doc. 31-2, pp. 25–26); (Doc. 31-7, p. 7). Hoffman said that Plaintiff was rude to him and used curse words. (*Id.*). Plaintiff states that she reported Hoffman's racial harassment directly to White. (*Id.*). After White received Hoffman's complaint, White talked with Plaintiff about how she should not speak rudely to customers. Plaintiff was upset with White's response and felt that the company was allowing customers to discriminate against her. (Doc. 31-7).[3]

---

[2] In the Complaint and Answer, the parties refer to the customer as Michael Hoffman. (Docs. 1, 6). In the discovery documents, the customer is referred to as both Hoffman (Docs. 25-3, 31-4, 31-9) and Huffman (Docs. 31-3, 31-7). In Defendant's motion for summary judgment and Plaintiff's response, the parties refer to the customer as Huffman. The Court will use Hoffman as the customer's name.

[3] Holley Roberts, an employee at Defendant's Thomasville store, sat in the meeting with White and Plaintiff. (Doc. 31-7, p. 2). According to Roberts, Plaintiff responded to White saying, "[S]o we are just supposed to let customers talk to us

After the March 14 incident with Hoffman, Plaintiff called Defendant's Regional Office and spoke with Karen Shakerin, the Regional Human Resources Manager. (Doc. 31-2, pp. 13, 27). Plaintiff reported the incident to Shakerin, but she omitted that the customer used racial slurs. (*Id.* at 27). Rather, Plaintiff alluded to Hoffman's harassment and said "she did not want to work for a company that expected her to be disrespected." (*Id.* at p. 28).[4] Plaintiff also told Shakerin that she had interviewed with O'Reilly Auto Parts. (*Id.*).

The parties dispute whether Plaintiff resigned her position at AutoZone during this conversation with Shakerin. According to Defendant, Plaintiff told Shakerin that she was submitting her two weeks' notice of resignation and that she planned to go work for O'Reilly Auto Parts. (Doc. 25-4, p. 3). Based on this information, Shakerin spoke with Curtis Allen, Defendant's Regional Manager. (Doc. 25-4, p. 6); (Doc. 25-2, p. 11). Allen advised Shakerin to accept Plaintiff's resignation immediately rather than allow her to continue working for two weeks. (Doc. 25-4, p. 6). Defendant, through its employees, decided to accelerate Plaintiff's resignation because she indicated that she was leaving to work for a competitor. (*Id.*). Shakerin relayed this information to White, and he

---

any way they want to? I can't believe this company will allow customers to do that." (*Id.*).

[4] Plaintiff said something similar to White. Baker's notes were submitted into evidence, documenting a meeting between himself, Plaintiff, and White. (Doc. 31-7). Baker wrote that he heard "Paula Gar[d]ner ask White [']What kind of company would let a customer talk to them any kind of [] way, cuss them[,] and talk to them like a dog.[']" (*Id.* at p. 1).

communicated to Plaintiff that her resignation had been accepted effective immediately. (Doc. 25-4, pp. 13–14); (Doc. 31-7, p. 5).

Plaintiff contends that she never resigned from her employment and never submitted a two weeks' notice. (Doc. 31-3, p. 3). Plaintiff argues that she called Shakerin to complain about how the company treated her and to request information as to how she should resign. (Doc. 30, p. 2). She sought only to inquire about Defendant's resignation policy—not actually resign. (*Id.*). According to Plaintiff, Defendant "purposely distorted her request for information" by immediately accepting her purported resignation. (*Id.*).

## II.   SUMMARY JUDGMENT STANDARD

A principal purpose of the summary judgment rule is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Courts grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Each party may support their factual assertions by citing to evidence in the record, including the discovery and disclosure materials on file, affidavits or declarations, stipulations, or other materials. Fed. R. Civ. P. 56(c)(1). When considering a motion for summary judgment, the court evaluates all the

evidence, together with any logical inferences, in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The court may not make credibility determinations or weigh the evidence. *Id.*; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). Credibility determinations and weighing of the evidence are functions solely of a jury—"not those of a judge." *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

Plaintiff brings two claims alleging race discrimination and retaliation under Title VII and 42 U.S.C. § 1981. Title VII prohibits employers from discriminating against individuals based on race. 42 U.S.C. § 2000e-2(a)(1)–(2). Similarly, § 1981 ensures all citizens have "the same right" to "make and enforce contracts" and shall receive "the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." The two provisions essentially overlap. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 454–55 (2008) (acknowledging "a necessary overlap between Title VII and § 1981") (quotation marks omitted). When a plaintiff brings claims under Title VII and § 1981 "for the same allegedly unlawful employment discrimination, the elements of the two causes of action are identical, and identical methods of proof, such as the *McDonnell Douglas* framework, are used for both causes of action." *Johnson v. Miami-Dade County*, 948 F.3d 1318, 1325 (11th Cir. 2020) (citations omitted).

6

Plaintiff contends that Defendant violated Title VII and § 1981 by wrongfully terminating her. (Doc. 30, p. 2). She alleges that she complained to Defendant's human resources representative about the treatment she received after alerting her manager to a customer using racial slurs toward her. (*Id.*). During this conversation, Plaintiff expressed her concerns about how the company addresses racial harassment from customers. Plaintiff also inquired about Defendant's resignation policy. (*Id.*). But, according to Plaintiff, Defendant "purposefully distorted her request for information as a resignation." (*Id.*). Therefore, Defendant terminated her and disingenuously asserted that it relied on her valid resignation. She claims that race discrimination and retaliation for expressing her concerns motivated Defendant to accept and accelerate her purported resignation.

## A. Race Discrimination

Plaintiff proceeds on her race discrimination claim by relying on circumstantial evidence of Defendant's discriminatory conduct. (Doc. 30, p. 7). To survive summary judgment, Plaintiff first bears the burden to satisfy the *prima facie* elements set forth in the *McDonnell Douglas* burden-shifting framework. *Lewis v. Union City, Georgia*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under *McDonnell Douglas*, she must demonstrate: "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she

was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Id.* at 1220–21. If Plaintiff satisfies these elements, then the burden shifts to Defendant "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. Should Defendant make this showing, the burden shifts back to Plaintiff. *Id.* Plaintiff must demonstrate that Defendant's proffered "legitimate, nondiscriminatory reason" was "merely a pretext for [its] unlawful discrimination." *Id.*

The parties do not dispute that Plaintiff, an African American woman, belongs to a protected class. Neither do they dispute that she was qualified to perform her job at Defendant's AutoZone store. Defendant's Motion for Summary Judgment argues primarily that Plaintiff resigned from her position, and thus she suffered no adverse employment action. (Doc. 25-1, p. 13). Defendant further argues that Plaintiff cannot establish that Defendant treated its white employees more favorably because Defendant also immediately terminated those employees who resigned and indicated that they were leaving to work for a competitor. (*Id.*). The Court first addresses these disputed elements to determine whether Plaintiff has established her *prima facie* case or if material disputes of fact exist.

8

## 1. Adverse Employment Action

Firing an employee constitutes an adverse employment action to sustain a race discrimination case. *See Webb-Edwards v. Orange Cty. Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) ("The Supreme Court has defined an adverse employment action as . . . [a] tangible employment action [that] constitutes significant change in employment status such as hiring, firing, . . . ." (quotation marks and citation omitted)). Defendant argues that Plaintiff cannot satisfy this element because she resigned from her job at AutoZone. (Doc. 25). Plaintiff called Shakerin, Defendant's Regional Human Resources Manager, to report the incident of racial harassment, and according to Shakerin, during that call Plaintiff "said she was giving her two-weeks['] notice." (Doc. 25-4, p. 3). Further, Shakerin said Plaintiff "stated she had interviewed with O'Reilly's, . . . and [she was] going to work for them." (*Id.*). Plaintiff avers in her declaration that she "never resigned" from her employment with AutoZone; she never offered her two weeks' notice; and to the extent that Defendant interpreted Plaintiff's communications as a resignation, Plaintiff contends it was never her intention to resign. (Doc. 31-3, pp. 3–4). Rather, she called Shakerin to inquire about how to resign should she decide to do so. (Doc. 31-9, p. 2).

These contradicting narratives from Plaintiff and Defendant indicate a material factual dispute regarding whether Plaintiff suffered an adverse employment action. A reasonable jury could find Plaintiff's evidence credible and

9

conclude that Defendant terminated her employment. The Court finds, therefore, that Plaintiff's evidence, viewed in the light most favorable to her, precludes summary judgment as to this issue.

## 2.  Similarly Situated Employees

The Court next considers whether Defendant treated similarly situated white employees more favorably than Plaintiff. Plaintiff's first task is to point to other AutoZone employees who were in a similar position as Plaintiff. Specifically, a plaintiff "must show that she and her comparators are similarly situated in all material respects." *Lewis*, 918 F.3d at 1226 (quotation marks omitted). "[A] valid comparison will turn not on formal labels," such as job title or function, "but rather on substantive likenesses." *Id.* at 1228. To have "substantive likeness," a comparator generally: "will have engaged in the same basic conduct (or misconduct) as the plaintiff; will have been subject to the same employment policy, guideline, or rule as the plaintiff; will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff; and will share the plaintiff's employment or disciplinary history." *Id.* at 1227–28 (citations omitted). Then, Plaintiff must show that Defendant treated these similarly situated employees more favorably.

As to this element, Plaintiff points to four white employees who resigned from their employment with Defendant. (Doc. 30, pp. 10–11). The four white employees "unambiguously resigned" and told Defendant that they were going to

10

work for a competitor. (*Id.*). Defendant consequently accelerated their resignations. Like Plaintiff, these employees were not permitted to work two weeks after notifying Defendant of their resignations. (Doc. 31-4, pp. 10–12). In these instances with Plaintiff and the white employees Defendant invoked its policy of accepting and accelerating a resignation when the employee expresses that he or she is going to work for a competitor.

The difference in conduct—specifically, that the white employees "unambiguously resigned" and Plaintiff only complained or inquired about how to resign—does not defeat "similarly situated" status. First, Defendant perceived that Plaintiff and the white employees engaged in the same conduct. Second, Plaintiff's assertion that she and the white employees conducted themselves differently is, according to Plaintiff, evidence of the alleged racial discrimination. In other words, these cases suggest that Defendant applied its resignation policy differently to the white employees and Plaintiff.

Plaintiff argues that Defendant treated these white employees more favorably because Defendant applied the resignation policy to Plaintiff although she did not resign. In the four instances where Defendant accepted the white employees' resignations, those resignations were unambiguous. Here, Plaintiff alleges that she did not intend to resign. Nevertheless, Defendant accepted and accelerated her unintended resignation. According to Plaintiff, the difference in how these employees communicated their resignations demonstrates

11

Defendant's favorable treatment to its white employees. Defendant allowed the white employees to articulate their resignations fully and intentionally before applying its resignation policy. Plaintiff alleges she merely expressed her complaints to Shakerin and inquired about how to resign. That conversation, in turn, resulted in her termination. The difference between Plaintiff and the white employees' communications suggests that Defendant did not offer to Plaintiff the same opportunity to discuss her intentions with the company that the white employees received. Instead, Defendant unilaterally accelerated Plaintiff's termination even though she had not "unambiguously resigned" like the white employees.

Because, as discussed above, the fact as to whether Plaintiff resigned is still in dispute, a dispute also exists as to whether similarly situated employees received more favorable treatment. Should a reasonable jury find that Plaintiff did not resign in her conversation to Shakerin, then the jury could also find that Defendant treated its white employees more favorably because Defendant subjected Plaintiff to its resignation policy despite Plaintiff not communicating her "unambiguous" intention to resign.

### 3.  Legitimate, Nondiscriminatory Explanation

Plaintiff has presented sufficient evidence to establish the *prima facie* elements of her race discrimination claim. The burden now shifts to Defendant "to articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d

12

at 1221. Defendant's legitimate, nondiscriminatory reason for Plaintiff's termination is that Shakerin genuinely believed that Plaintiff intended to resign. According to Shakerin, Plaintiff told her that "she was giving her two-weeks['] notice;" she had "interviewed with O'Reilly's;" and she was leaving AutoZone to work for the competitor. (Doc. 25-4, p. 3); (Doc. 31-7). Shakerin also stated that during her phone conversation with Plaintiff, Plaintiff did not mention that Hoffman had used racial slurs. She indicated only that "a customer had disrespected her and used profanity," and she felt like Defendant "allow[ed] a customer to disrespect her." (*Id.* at p. 4). Plaintiff admitted during her deposition that she did not tell Shakerin that Hoffman used racial slurs. (Doc. 25-3, p. 85).

Furthermore, Shakerin's testimony is consistent with evidence concerning Plaintiff's conversations with Baker, Plaintiff's immediate supervisor, and White, the Thomasville AutoZone's District Manager. On March 3, 2017, two weeks before the incident with Hoffman, Plaintiff texted White that she had an interview with O'Reilly Auto Parts scheduled for the next week. (Doc. 31-8, p. 4). On March 14, 2017, the day of the incident, Plaintiff told Baker that she was submitting her two weeks' notice and "might take the job" at O'Reilly Auto Parts. (Doc. 31-7, p. 1).

Although Plaintiff disputes that she resigned, given the evidence Defendant has presented, a reasonable jury could find that Plaintiff did in fact resign, or at least, Defendant reasonably interpreted her communications as a

13

resignation without any discriminatory intent. The Court finds that Defendant has provided sufficient evidence to show a legitimate, nondiscriminatory reason for terminating Plaintiff.

### 4. Pretext

The evidentiary burden now shifts back to Plaintiff to show that Defendant's proffered reason for her termination was merely pretext for racial discrimination. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("[T]he plaintiff must then have an opportunity to prove . . . that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."). To establish pretext, a plaintiff must prove "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). This means that a plaintiff must address the proffered reason "head on and rebut" its truth. *Chapman v. AI Trans.*, 229 F.3d 1012, 1030 (11th Cir. 2000). "[T]he employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* Rather, the court's "inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.* (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). A plaintiff can demonstrate that the articulated reasons were not believable "by pointing to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered explanation." *Brooks v. Cty.*

14

*Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation marks and citation omitted).

Defendant's legitimate reason for terminating Plaintiff was its honest belief that she had submitted her resignation. To establish pretext, Plaintiff argues that she never resigned her employment from AutoZone and that she did not immediately start working for an AutoZone competitor. (Doc. 30, p. 11). The fact that Plaintiff never actually resigned—absent any evidence of discrimination— does not suggest any pretext. An employer's honestly held, nondiscriminatory belief, though mistaken, is insufficient to establish liability. *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). "[O]ur sole concern is whether unlawful discriminatory animus motivated the decision" to terminate Plaintiff. *Id.* (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002)) (quotation marks omitted). Thus, even though Shakerin may have incorrectly concluded that Plaintiff resigned, that fact alone cannot establish pretext. An employer may fire an employee based on erroneous facts as long as discrimination is not the employer's true motivation. *Id.* And no evidence in the record suggests Defendant's decision was discriminatory.

Similarly, that Plaintiff did not immediately work for a competitor also cannot establish that Defendant's decision to accelerate Plaintiff's purported resignation was discriminatory. Defendant has presented evidence that Shakerin and White honestly believed that Plaintiff intended to leave AutoZone to work for

a competitor. Plaintiff's affidavit states that as of March 14, 2017, she "had neither been offered nor accepted a position with any AutoZone competitor." (Doc. 31-3, p. 4). That assertion, however, is insufficient to create a factual dispute regarding pretext because it does not refute what Plaintiff may have said to Shakerin, or what Shakerin may have genuinely understood from their conversation.[5] At the time Defendant terminated Plaintiff, Defendant was unaware that she had neither been offered nor accepted a position with a competitor. What matters is what Shakerin understood from her conversation with Plaintiff. And Plaintiff has not presented evidence to refute that when speaking with Shakerin, she may have suggested an intention to work for O'Reilly Auto Parts.

The evidence before the Court demonstrates nothing more than a miscommunication between Plaintiff and Shakerin. Shakerin discerned from their conversation that Plaintiff intended to resign from AutoZone. Plaintiff characterizes her words as complaints about AutoZone or simply an inquiry about how to resign, but not rising to a resignation. Although Shakerin may have misunderstood Plaintiff, no evidence suggests that discriminatory animus was Defendant's true motive for terminating Plaintiff. *See Alvarez*, 610 F.3d at 1264 ("Despite [the] shifts in the burden of production, the ultimate burden of

---

[5] When Plaintiff was specifically asked about whether she told Shakerin that she intended to work for O'Reilly Auto Parts, Plaintiff said she did "not recall" telling Shakerin about the O'Reilly Auto Parts' position. (Doc. 25-3, p. 85).

persuasion remains on the plaintiff to show that the defendant intentionally discriminated against her."). The Court therefore finds that Plaintiff has not satisfied her burden to establish pretext, and her race discrimination claim fails.

### B. Retaliation

Title VII and § 1981 prohibit employers from retaliating against an employee because she engaged in a statutorily protected activity. *See* 42 U.S.C. § 2000e-3(a); *CBOCS W., Inc.*, 553 U.S. at 457 (holding "that 42 U.S.C. § 1981 encompasses claims of retaliation"). Like Plaintiff's direct discrimination claim, the Court uses the *McDonnell Douglas* burden-shifting framework to analyze her race-based retaliation claim. "Under this framework, a plaintiff alleging retaliation must first establish a prima facie case by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009). Once the plaintiff establishes her *prima facie* case of retaliation, the burden "shifts to the defendant to rebut the presumption [of retaliation] by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 1308. After the defendant makes this showing, the plaintiff then has the "opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions." *Id.*

To sustain her retaliation claim, Plaintiff relies on the same evidence discussed above regarding her direct discrimination claim. (Doc. 30, pp. 12–13). Even if Plaintiff can satisfy the other elements of her *prima facie* case or at least raise a material dispute, the Court has already concluded that she has not put forth any evidence to show pretext. No evidence suggests that Defendant's acceptance of her resignation was discriminatory, and Plaintiff has not shown that Defendant's articulated reason for accepting her resignation was untrue. Rather, viewing the evidence in the best light for Plaintiff, the evidence shows that Defendant may have unintentionally misinterpreted Plaintiff's complaints as a resignation, and consequently, accelerated her resignation based on Plaintiff's conversations with Shakerin and various other AutoZone employees indicating that she intended to work for O'Reilly Auto Parts.

## IV.   CONCLUSION

Plaintiff has not presented any evidence to suggest that racial discrimination motivated Defendant's decision to terminate Plaintiff. Plaintiff's claims fail, and accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 25). Plaintiff's claims are **DISMISSED.**

**SO ORDERED** this 6th day of May, 2020.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

kac

18